## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

AUNDRA ANDERSON,                    )
                                    )
                 Plaintiff,         )
vs.                                 )        NO.  CIV-05-0729-HE
                                    )
DON BLAKE, KIMBERLY LOHMAN          )
SUITERS, OHIO/OKLAHOMA HEARST-      )
ARGYLE TELEVISION, INC., THE CITY   )
OF NORMAN, JOHN and JANE DOE(S),    )
                                    )
                 Defendants.        )

## ORDER

Plaintiff Aundra Anderson brought this action against defendants Officer Don Blake, Kimberly Lohman Suiters ("Lohman"), Ohio/Oklahoma Hearst-Argyle Television, Inc. ("KOCO"), the City of Norman, and John and Jane Doe(s).  Anderson claims that her privacy rights under the United States Constitution and Oklahoma law were violated when a video tape recording of her alleged rape was released to the defendants, who broadcast clips of the video on the evening news.  The federal claim arises under 42 U.S.C. § 1983.  The state law claims are for unwarranted intrusion into private affairs and public disclosure of private facts.

Defendants Lohman and KOCO have filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), asserting that no federal claim is stated because neither defendant Lohman nor KOCO are state actors and none of their alleged actions were performed under color of state law.  They also maintain that no state law claim is stated for unwarranted intrusion into

a private place or for public disclosure of private facts.

When considering a 12(b)(6) motion, all well-pleaded factual allegations in the complaint are accepted as true and those allegations, and any reasonable inferences that may be drawn from them, are construed in the light most favorable to the nonmoving party. Clark v. State Farm Mut. Auto. Ins. Co., 319 F.3d 1234, 1240 (10th Cir. 2003). A dismissal is appropriate only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of the claims which would entitle the plaintiff to relief." *See, e.g.*, McDonald v. Kinder-Morgan, Inc., 287 F.3d 992, 997 (10th Cir. 2002). Applying this standard, the Court concludes the defendant's motion to dismiss should be **GRANTED in part** and **DENIED in part**.

### §1983 CLAIM

The plaintiff's § 1983 claim against defendants Lohman and KOCO alleges that the defendants acted under "color of state law" and violated plaintiff's right to privacy by obtaining the video from defendant Blake and playing clips of the video on a news broadcast.

Section 1983 of Title 42 of the United States Code provides individuals with redress for violations of rights "secured by the Constitution and laws of the United States" where the violations are committed under color of state law. Yanaki v. Iomed, Inc., 415 F.3d 1204, 1207 (10th Cir. 2005) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999) (internal quotation omitted)). Under § 1983, a claim may only be brought against defendants who "represent [the state] in some capacity, whether they act in accordance with their authority or misuse it." Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191

2

Case 5:05-cv-00729-HE   Document 59   Filed 10/21/05   Page 3 of 13

(1988) (internal citations omitted).  "Private individuals and entities may be deemed state actors, however, if they have 'acted together with or [have] obtained significant aid from state officials, or [if their] conduct is otherwise chargeable to the state.'"  Johnson v. Rodrigues, 293 F.3d 1196, 1202 (10th Cir. 2002) (quoting Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 937 (1982)).  Even accepting all the plaintiff's factual allegations as true, the Court concludes plaintiff's complaint fails to allege facts sufficient for finding state action by these private parties.

Plaintiff relies on the "joint action test" as the basis for her claim that defendants Lohman and KOCO should be treated as state actors.[1]  See Gallagher v. "Neil Young Freedom Concert", 49 F.3d 1442, 1453 (10th Cir. 1995).  Under the joint action test, state action occurs if "a private party is a 'willful participant in joint action with the State or its agents.'"  Id.  A corollary requirement of the joint action theory is a showing that "both public and private actors share a common, unconstitutional goal."  Sigmon v. CommunityCare HMO, Inc., 234 F.3d 1121, 1126 (10th Cir. 2000) (internal citations omitted); Scott v. Hern, 216 F.3d 897, 907 (10th Cir. 2000); Gallagher, 49 F.3d at 1455 ("[S]tate and private entities must share a specific goal to violate the plaintiff's constitutional rights by engaging in a particular course of action.").

---

[1] *The Tenth Circuit has recognized four tests for determining whether state action exists: 1) nexus, 2) interdependence, 3) joint action, and 4) public function.* Gallagher, *49 F.3d at 1447-57. In* Brentwood Acad. v. Tenn. Secondary School Athletic Ass'n, *531 U.S. 288, 295 (2001), the Supreme Court emphasized that when considering the different tests for state action, "the criteria lack rigid simplicity . . . no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient."*

In resolving a motion to dismiss, as noted previously, all well-pleaded allegations of the complaint are accepted as true and reasonable inferences are drawn in the plaintiff's favor. However, conclusory allegations of state action or joint action are insufficient in a § 1983 action. The pleadings must specifically allege facts tending to show the basis for an allegation of state action. Penner v. Cordell, No. 05-6003, 2005 WL 1821828, at *1 (10th Cir. Aug. 3, 2005) (quoting Sooner Prods. Co. v. McBride, 708 F.2d 510, 512 (10th Cir. 1983) ("[M]ere conclusory allegations with no supporting averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action.")); Beedle v. Wilson, 422 F.3d 1059, 1073 (10th Cir. 2005); Scott, 216 F.3d at 907.[2]

The only factual allegations arguably supporting a claim of joint action between Blake, Lohman, and KOCO are 1) the disclosure of and viewing of the tape; 2) the exchange of the videotape for Blake's on-camera interview; 3) the telephone call made to plaintiff by defendants Blake and Lohman; and 4) the previous ride-along of KOCO employees with Officer Blake. The Court concludes these facts are insufficient, individually or cumulatively, to make out a basis for a finding of joint or "state" action.

The media does not engage in state action merely by its use or receipt of information from state officials. See Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271 (10th Cir. 1989). If the media engaged in state action merely by publishing information it acquired from state officials, the media "would be significantly discouraged from interviewing state

---

[2] *Penner is an unpublished decision cited for persuasive value only under 10th Cir. R. 36.3(B).*

officials to gather information on important public issues." Id. at 1271.

Officer Blake's alleged exchange of the plaintiff's video for an on-camera interview also fails to establish any joint action by the defendants. "The generalized allegation of a wink and a nod understanding . . . does not amount to an agreement or conspiracy to violate [plaintiff's] rights in particular." Brunette v. Humane Soc'y, 294 F.3d 1205, 1212 (9th Cir. 2002). The defendants' alleged exchange is not evidence of the parties' "specific goal to violate the plaintiff's constitutional rights," see Gallagher, 49 F.3d at 1455, but instead of each defendant's independent goal– Officer Blake's goal of being on television and Lohman's goal of acquiring the video or other information.

Similarly, the telephone conversation between the plaintiff, defendant Blake, and defendant Lohman, is insufficient to constitute joint action by the defendants.[3] Although Blake and Lohman spoke consecutively with the plaintiff, the presence of both defendants on the same telephone line is insufficient to allege a common goal. See Yanaki v. Iomed, Inc., 415 F.3d 1204, 1212 (10th Cir. 2005) ("[T]he mere acquiescence of a state official in the actions of a private party is not sufficient.") (internal citation and quotations omitted); Parker v. Boyer, 93 F.3d 445, 448 (8th Cir. 1996) (holding a television station's videotaping of a raid was not state action because both the police and media were acting for their own purpose and neither was assisting the other in their "tasks"). Merely providing a phone

---

[3] *The telephone conversation allegedly involved defendant Blake calling the plaintiff and after a brief conversation, placing defendant Lohman on the phone, who then conducted a brief conversation with the plaintiff before terminating the call. Complaint, para. 25.*

5

number or initiating a phone contact is insufficient to establish the necessary joint action.

The remaining potential basis for state action consists of an earlier ride along, where employees of defendant KOCO were permitted to accompany defendant Blake on an earlier arrest of the plaintiff's alleged attacker. While such prior contacts or actions reflect ongoing interest by KOCO and its employees in the actions of plaintiff's alleged attacker, they do not support an inference that the parties shared a common goal of violating "*plaintiff's constitutional rights.*" *See* Gallagher, 49 F.3d at 1455 (emphasis added).

Plaintiff relies generally upon Berger v. Hanlon, 129 F.3d 505 (9th Cir. 1999), *vacated and remanded by* 526 U.S. 808 (1999), *judgment reinstated by* 188 F.3d 1155 (9th Cir. 1999), to establish that the media and government relationship alleged to exist was sufficient here to support a finding of joint action. In Berger, the Ninth Circuit found joint action between the United States Fish & Wildlife Service (USFWS) and CNN when the parties executed a letter agreement allowing CNN to accompany government agents on a USFWS raid, CNN participated in the pre-search briefing regarding the raid where confidential information was disclosed, and CNN entered the Berger's ranch in the USFWS caravan. 129 F.3d 506, 514-16 (9th Cir. 1997); *cf.* Jones v. Taibbi, 508 F. Supp. 1069, 1073 (D.C. Mass. 1981) (no state action where media independently filmed and edited arrest footage). It is less than clear that Berger is consistent with the standards for state action by private parties set out in Gallagher and other Tenth Circuit cases. And in any event, the instances of interaction between defendants Blake and Lohman do not rise to the level of those set out in Berger. 129 F.3d at 515 ("[W]e have not only a verbal agreement, but a written contractual commitment . . . to

engage jointly in an enterprise that only the government could lawfully institute . . . for the mutual benefit of both the private interests of the media and the government officials' interest in publicity."); *see* Phelps v. Wichita Eagle-Beacon, 886 F.2d 1262, 1271-72 (10th Cir. 1989) (recommending multiple considerations on remand for state action determination). The existence of multiple contacts between a state actor and a private party, in and of itself, does not support an inference of joint action. Here, the alleged contacts were not inconsistent with the normal interplay between newspersons and a public official from whom they seek information and fall short of suggesting any common goal of violating plaintiff's rights. The facts as alleged by the plaintiff, with all reasonable inferences drawn in her favor, fail to state a basis for a finding of state action by defendants Lohman and KOCO. Defendants' motion to dismiss is GRANTED as to plaintiff's § 1983 claim. If other material facts exist which may bear on the state action issue, plaintiff may, of course, seek leave to amend.

## INVASION OF PRIVACY BY INTRUSION UPON SECLUSION

Plaintiff bases her tort claim of invasion of privacy on the theories of intrusion upon seclusion and publication of private facts. *See, e.g.,* McCormack v. Okla. Publishing Co., 613 P.2d 737, 740 (Okla. 1980) (recognizing Oklahoma's adoption of the tort of the invasion of privacy as provided in § 652 of the Restatement of Torts). *See generally* Restatement (Second) of Torts § § 652A-E (1977).

The Oklahoma Supreme Court has held that an intrusion upon seclusion claim has two elements: 1) a nonconsensual intrusion, 2) which is highly offensive to a reasonable person. Dubbs v. Head Start, Inc., 336 F.3d 1194, 1220 (10th Cir. 2003) (relying upon Gilmore v.

<u>Enogex, Inc.</u>, 878 P.2d 360, 366 (Okla. 1994)).[4]  Here, the plaintiff has not alleged facts which give rise to the necessary sort of "intrusion."

A person does not intrude on a plaintiff's seclusion simply by securing information about the plaintiff from a public official and then publishing it.  Publication alone is insufficient to constitute an intrusion upon seclusion.  Restatement (Second) of Torts § 652B cmt. a (1977) ( "The form of invasion . . . does not depend upon any publicity given to the person whose interest is invaded or to his affairs.  It consists solely of an intentional interference with *his* solitude or seclusion." (emphasis added)).  Intrusion also requires that the "trespassing" party be aware of their malfeasance: "An intrusion occurs when an actor believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." <u>Dubbs v. Head Start, Inc.</u>, 336 F.3d 1194, 1221 (10th Cir. 2003) (*quoting* <u>Fletcher v. Price Chopper Foods of Trumann, Inc.</u>, 220 F.3d 871, 876 (8th Cir. 2000) (interpreting the intent requirement of § 652B) (internal quotations omitted)).

Here, the essence of the allegations is that the media defendants sought information about an investigation and alleged crime from a police officer involved in the investigation of it.  They then had a telephone conversation with the alleged victim.  Portions of the information received, in the form of access to the videotape, were then included in a televised newscast.

---

[4]  *The Restatement (Second) of Torts § 652B defines an intrusion upon the seclusion of another as:*

> *One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person.*

8

Such actions are insufficient to state a claim for intrusion.  *See* Lovgren v. Citizens First Nat'l Bank of Princeton, 534 N.E. 2d 987, 989 (Ill. 1989) ("[T]he nature of this tort depends upon some type of highly offensive prying . . . not publication or publicity.")*; cf.* Deteresa v. Am. Broadcasting Cos., Inc., 121 F.3d 460, 466 (9th Cir. 1997) (recognizing intrusion occurred where "a news team entered someone's bedroom without authorization to film a rescue attempt by paramedics"); Fields v. Atchison, Topeka, and Santa Fe Ry. Co., 985 F. Supp. 1308, 1312 (D. Kan. 1997) (no intrusion where defendants listened to tapes with knowledge of their private nature); Beard v. Akona, Inc., 517 F. Supp. 128, 132 (D.C. Tenn. 1981) (listening to conversations "obtained wholly independently by a third party" insufficient for claim of intrusion).

The fact that it may have been improper for Blake to have permitted access to the tape, based on the police department's internal policy or otherwise, does not make it improper for the media defendants to seek or acquire the information from the police.  There is no allegation that either of these defendants participated in or directed any illegal news gathering.  *See* Lee v. Calhoun, 948 F.2d 1162, 1165 (10th Cir. 1991) (publication of materials acquired from third parties insufficient for intrusion); Fields, 985 F. Supp. at 1312.  A single phone conversation, even if uncomfortable to the plaintiff, is also insufficient to allege intrusion.  *See* Deteresa v. Am. Broadcasting Cos., Inc., 121 F.3d 460, 466 (9th Cir. 1997) (no intrusion where plaintiff "spoke voluntarily and freely"); Wolf v. Regardie, 553 A.2d 1213, 1218 (D.C. 1989) ("[A]ppellant's phone conversation . . . a colloquy in which he voluntarily participated, could hardly be considered intrusive."); *cf.* Lovgren v. Citizens First Nat'l Bank, 534 N.E. 2d 987,

989 (Ill. 1989) ("persistent and unwanted telephone calls" may be sufficient for intrusion).

The complaint fails to state a claim against defendants Lohman and KOCO for invading her privacy by intrusion upon seclusion and defendants' motion is GRANTED as to that claim.

<u>INVASION OF PRIVACY BY PUBLICATION OF PRIVATE FACTS</u>

In order to recover for invasion of privacy by publication of private facts, the publication must: (1) be highly offensive to a reasonable person, (2) contain private facts, (3) be a public disclosure of private facts, and (4) not be of legitimate concern to others. <u>Hadnot v. Shaw</u>, 826 P.2d 978, 986 (Okla. 1992); <u>Guinn v. Church of Christ of Collinsville</u>, 775 P.2d 766, 781 (Okla. 1989).[5] The potential reach of the tort of invasion of privacy is limited by the First Amendment to the United States Constitution, which protects certain conduct that might otherwise constitute an actionable invasion of privacy.[6] <u>Cox Broadcasting Corp. v. Cohn</u>, 420 U.S. 469 (1975); <u>Gilbert v. Medical Economics Co.</u>, 665 F.2d 305, 307 (10th Cir. 1981).  The constitutional privilege is not absolute, however, and the right of an individual to keep information private must be balanced against the right of the press to disseminate newsworthy information. <u>Gilbert,</u>

---

[5] *The Restatement (Second) of Torts § 652D describes the tort thusly: "One who gives publicity to a matter concerning the private life of another is subject to liability to the other for invasion of his privacy, if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public." See <u>McCormack v. Okla. Publishing Co.</u>, 613 P.2d 737, 740 (Okla. 1980) (recognizing the Restatement as the standard in Oklahoma for the four claims of invasion of privacy).*

[6] *The Restatement acknowledges the potential conflict of privacy rights with First Amendment rights: "This section [652D] provides for tort liability involving a judgment for damages for publicity given to true statements of fact.  It has not been established with certainty that liability of this nature is consistent with the free-speech and free-press provisions of the First Amendment."  Restatement (Second) of Torts § 652D (1977), Special Note on Relation of § 652D to the First Amendment of the Constitution.*

665 F.2d at 307.  Even truthful, newsworthy information must "have some substantial relevance to a matter of legitimate public interest."  Id. at 308.  And even where matters are within the protected sphere of legitimate public interest, there may be some facts about an individual which are sufficiently personal or private as to be outside the constitutional privilege.[7]  Id. ("Even where certain matters are clearly within the protected sphere of legitimate public interest, some private facts about an individual may lie outside that sphere.").  As the Court of Appeals noted in Gilbert: "[T]his standard properly restricts liability for public disclosure of private facts to the extreme case, thereby providing the breathing space needed by the press to properly exercise effective editorial judgment."  Id.

Here, the complaint sufficiently alleges that private facts were publicly disclosed about plaintiff which a reasonable person might find to be highly offensive.  The far closer question is whether the complaint also alleges facts sufficient to support an inference that the publication were not of legitimate concern to others.  Stated otherwise, does the complaint allege conduct by defendants that falls outside the applicable zone of First Amendment protection.[8]

The level of constitutional protection afforded the press in circumstances such as these is very high.  Here, there is no dispute that the story of the alleged rape of plaintiff, and the

---

[7] Defendants' suggestion that Gilbert totally insulates from liability publication of any matter that is newsworthy, or relevant to a newsworthy matter, appears to overstate the Gilbert standard. Gilbert, 665 F.2d at 307; see also Restatement (Second) of Torts § 652 cmt. h ("The line is to be drawn when the publicity ceases to be the giving of information to which the public is entitled, and becomes a morbid and sensational prying into private lives for its own sake.").

[8] Gilbert implies that the standard of newsworthiness employed in First Amendment analysis is the same as, or substantially similar to, the "lack of legitimate concern" standard referenced in §652D.  665 F.2d at 307-308.

storyline as to the alleged attacker's multiple rapes, is newsworthy.  There is no question that the complaint alleges circumstances showing a nexus or relevant connection between the video clip played and the newsworthy event — the clip is alleged to depict the event.  Nonetheless, just as the Supreme Court's First Amendment jurisprudence stops short of holding that the truthful publication of private facts is always protected,[9] Gilbert suggests that the "extreme case" may exist where, notwithstanding the newsworthy nature of it, a publication may involve circumstances so private or intimate that it falls outside the zone of constitutional protection.  A video depiction of a violent, sexual act, committed in a non-public setting, might conceivably constitute such an extreme case.  *See* Haynes v. Alfred A. Knopf, Inc., 8 F.3d 1222, 1234 (7th Cir. 1993) ("Photographic invasions of privacy usually are more painful than narrative ones, and even partial nudity is an aggravating factor." ); *cf.* Florida Star v. B.J.F., 491 U.S. 524 (1989) (no liability for publishing name of rape victim); Schulman v. Group W Prods., 955 P.2d 469, 488 (Cal. 1998) (no liability for video footage of public area).

There is much in the alleged circumstances to suggest that defendants' publication of the video clip will ultimately prove to be non-actionable.  However, the Court concludes it is inappropriate, on a motion to dismiss, to reach that conclusion now.  The exact nature of the video depiction and surrounding circumstances is not presently before the Court, rendering premature the resolution of issues as to whether the defendant is sufficiently identified and

---

[9] *Bartnicki v. Vopper, 532 U.S. 514 (2001); Florida Star v. B.J.F., 491 U.S. 524 (1989); Cox Broadcasting Co. v. Cohn, 420 U.S. 469 (1975).*

whether the publication is otherwise constitutionally privileged.[10]  Accordingly, defendants'

motion to dismiss as to the claim for publication of private facts is **DENIED**.

**IT IS SO ORDERED**.

Dated this 21st day of October, 2005.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[10] *A copy of the video clip was submitted with defendants' motion.  However, as the motion before the Court is a motion to dismiss, which tests the sufficiency of the complaint, the Court has not viewed the clip.*